CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    FAX: (415) 436-7234
    Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:24-CR-00605 CRB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| KEVIN MARTINEZ-CRUZ, | Date: August 6, 2025<br>Time: 2:00 p.m.<br>Court: Hon. Charles R. Breyer |
| Defendant. | |

# INTRODUCTION AND SUMMARY

Mr. Kevin Martinez-Cruz is a professional drug dealer in San Francisco. Since 2018, he has been arrested a dozen times for drug dealing or violations of court orders arising from the same conduct. His repeated arrests reflect his complete disregard for the law and necessitate a significant punishment to deter him from simply continuing to distribute drugs in the troubled Tenderloin District of San Francisco. As a result, the government recommends at sentence of 46 months of incarceration for his unrepentant criminal conduct.

Mr. Martinez-Cruz is undocumented, and according to various San Francisco Police Department ("SFPD") police reports, when he has been arrested, he has purported to be a victim of human trafficking and claimed that he was being forced to sell drugs. However, there is no evidence to support

those allegations, and he makes no such allegation in his communication with the Probation Office. In fact, the government also understands that he refused to accept help from SFPD following his various arrests, and Mr. Martinez-Cruz's phones show that he has numerous photos of himself and others posing triumphantly with large sums of cash. *See* Complaint ¶ 40. He is no victim of human trafficking.

As a result of his numerous arrests for dealing drugs, Mr. Martinez-Cruz had several active stay-away orders from the Tenderloin, where he was dealing fentanyl, issued by judges in the San Francisco Superior Court. For example, he was ordered to stay:

- 150 yards away from the intersection of 8th Street and Mission Street until August 5, 2025 (Court No. 22008240);

- 300 yards away from 7th Street and Stevenson Street until November 22, 2025 (Court No. 22014015);

- 150 yards away from 200 Larkin Street (Court No. 23002526); and,

- 150 yards away from the 600 block of Eddy Street until March 21, 2026 (Court No. 23004041).

Yet these locations are the very places where he was repeatedly rearrested for dealing. Mr. Martinez-Cruz simply will not obey the orders of the courts he appears before when caught dealing drugs.

Mr. Martinez-Cruz was most recently arrested again on August 29, 2024, at the Powell Street BART Station, on an outstanding warrant for failure to appear on his many open state cases.

On December 10, 2024, he was indicted by a federal grand jury.

On April 30, 2025, Mr. Martinez-Cruz entered his guilty plea.

**STATEMENT OF FACTS**

This traditional drug dealing case encompasses six 21 U.S.C. § 841 charges for possession of controlled substances with the intent to distribute arising from three separate arrests – on August 3, 2022, March 17, 2023, and December 31, 2023 – in the Tenderloin District of San Francisco, California, in the Northern District of California. There are mandatory minimum charges for methamphetamine (actual) and fentanyl of more than 40 grams in Counts Three Five and Six. Mr. Martinez-Cruz is safety valve eligible, however, entitling him to a two-level reduction from the otherwise mandatory minimum

Guidelines. *See* PSR ¶ 20. In his Plea Agreement and in his allocution before this Court he admitted to violations of all the charges in this case.

**I.    Mr. Martinez-Cruz was Dealing Drugs on August 3, 2022**

Counts One and Two concern drug dealing in the Tenderloin on August 3, 2022. Count One alleges Mr. Martinez-Cruz possessed fentanyl with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Count Two alleges Mr. Martinez-Cruz possessed methamphetamine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

At approximately 5:53 p.m. on August 3, 2022, SFPD officers observed a hand-to-hand exchange between Mr. Martinez-Cruz and an unknown man mid-block on the west sidewalk of 8th Street between Minna Street and Mission Street. The unknown male walked away while placing an unknown item in his pants pocket, and Mr. Martinez-Cruz walked away while counting U.S. currency dollar bills. Law enforcement observed Mr. Martinez-Cruz engage in one more suspected narcotics transaction on the northwest corner of the intersection at 8th Street and Mission Street. At the time of his arrest, on August 3, 2022, he admits that he was in possession of approximately 9.41 net grams of purple fentanyl and two plastic bags containing 6.11 net grams of methamphetamine. He was also in possession of $710 in U.S. Currency that were proceeds from his drug sales.

**II.    Mr. Martinez-Cruz was Dealing Drugs on March 17, 2023**

Counts Three and Four concern Mr. Martinez-Cruz's second arrest seven months later, on March 17, 2023. Count Three alleges Mr. Martinez-Cruz possessed 40 grams or more of fentanyl with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), and Count Four alleges Mr. Martinez-Cruz possessed methamphetamine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

On March 17, 2023, SFPD observed Mr. Martinez-Cruz standing on the north side of Eddy Street in front of 650 Eddy Street in the Tenderloin. An unknown female approached him, and the two walked westbound on Eddy Street together. Mr. Martinez-Cruz removed his backpack from his back and then squatted down next to a parked vehicle. The female squatted down as well with him for several seconds, stood up, and then continued to walk westbound. Mr. Martinez-Cruz returned to the front of 650 Eddy Street. Another unknown female approached him. The two walked westbound on Eddy Street

together, and Mr. Martinez-Cruz again removed his backpack from his back and squatted next to a vehicle. The female gave him U.S. currency, and Mr. Martinez-Cruz gave her a small white substance. SFPD arrested Mr. Martinez-Cruz. He was in possession of $50. In his backpack, they found a Morton salt container with a removable bottom. Inside was a plastic bottle containing plastic bags with white chalk-like substances, comprising:

- 2.8 grams gross of suspected cocaine base
- 88.8 grams gross of suspected fentanyl
- 15.3 grams gross of suspected methamphetamine

Lab testing was conducted on the seized narcotics yielded the following results:

| Description | Confirmed Substance | Net Weight |
| --- | --- | --- |
| One knotted plastic bag containing white crystalline material | Methamphetamine | 14.13 grams |
| One knotted plastic bag containing white chalky material | Fentanyl | 25.26 grams |
| One knotted plastic bag containing off-white chunky material | Cocaine base | 1.65 grams |

Additional testing by the Western Regional Lab confirmed the weight of the fentanyl was more than 40 grams as charged in Count Three:

| Description | Confirmed Substance | Net Weight |
| --- | --- | --- |
| 37 plastic bags of powder | Fentanyl | 79.1 grams ± 0.9 grams |
| One plastic bag of powder | Fentanyl | 9.4 ± 0.2 grams |
| One plastic bag of powder | Cocaine | 1.622 g ± 0.002 grams |

### III. Mr. Martinez-Cruz was Dealing Drugs on December 31, 2023

Counts Five and Six concern Mr. Martinez-Cruz's third arrest nine months later, on December 31, 2023. Count Five alleges Mr. Martinez-Cruz possessed 40 grams or more of fentanyl with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), and Count Four alleges Mr.

Martinez-Cruz possessed 5 grams or more of pure methamphetamine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).

On December 31, 2023, an SFPD officer, while patrolling in the area of Charles J. Brenham Plaza and Market Street, recognized Mr. Martinez-Cruz. The officer knew that Mr. Martinez-Cruz had several outstanding warrants for selling narcotics and placed him under arrest. In the search incident to arrest, SFPD seized from Mr. MARTINEZ-CRUZ's person:

- A digital scale;
- A cellphone;
- $519 in U.S. currency;
- Empty clear plastic baggies; and
- A clear plastic bag containing individually wrapped pieces of:
  - 68.5 gross grams of suspected fentanyl, and
  - 21.0 gross grams of suspected methamphetamine.

Lab testing was conducted on a random sampling of the seized narcotics, consistent with laboratory protocol, yielding the following results:

| Description | Confirmed Substance | Net Weight |
| --- | --- | --- |
| One knotted plastic bag containing blue chalky material | Fentanyl | 10.82 grams |
| One knotted plastic bag containing white crystalline material | Methamphetamine | 5.57 grams |

Lab testing confirmed the weight of the fentanyl was more than 40 grams and the weight of the methamphetamine, which was 100% pure +/- 7%, was more than 5 grams:

| Description | Confirmed Substance | Net Weight |
| --- | --- | --- |
| 54 plastic bags of powder | Fentanyl | 61.4 grams ± 0.9 grams |
| 27 plastic bags of crystalline substance | Methamphetamine | 17.9 ± 0.02 grams (17.9 ± 1.2 grams of pure substance) |

# SENTENCING FACTORS

## I. Sentencing Guidelines

In this case, Mr. Martinez-Cruz admits responsibility for possessing with the intent to distribute over 802 kilograms of converted drug weight, including over 159 grams of fentanyl and over 20 grams of methamphetamine, both above the mandatory minimum thresholds of 5 years. Mr. Martinez-Cruz qualifies for a two-level reduction under the safety valve. USSG § 5C1.2. PSR ¶ 20.

The United States agrees with the Guideline Calculations set forth in the PSR: the base Offense Level is 28, with reductions for the Safety Valve and Acceptance of Responsibility, yielding an Adjusted Offense Level 23. PSR ¶¶ 19-28.

Mr. Martinez-Cruz has one criminal conviction in 2018 where he served a 60-day sentence. PSR ¶ 33. He was convicted for two misdemeanors: disobeying a court stay away order and trying to hide drugs he was carrying by soliciting help from another person when he saw the police coming to arrest him. He has over a dozen arrests for narcotics possession/sales or disobeying stay away orders. PSR ¶¶ 35-40, 42-43, 45,51. He was administratively removed by ICE on January 21, 2022. PSR ¶ 47.

Despite all of his arrests, Mr. Martinez-Cruz is in Criminal History Category II. This yields a sentencing range of 51-63 months. PSR ¶¶ 20-28, 32. The average and median length sentences for similarly situated defendants is 46 and 51 months respectively. PSR ¶ 22.

Taking in all of the above and, more importantly the 3353(a) factors discussed below, the government recommends a 46-month sentence, slightly higher than the Probation Office's 36-month recommendation, but below the low end of the applicable Sentencing Guideline range.

## II. Section 3553 Factors

As the Court is aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities), but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Pursuant to 18 U.S.C. § 3553(a), the Court must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant, and just punishment, including the need for both general and specific deterrence.

Mr. Martinez Cruz described to the Probation Office what appears to be a common reality for those from Honduras who come here to deal drugs. PSR ¶¶ 50-55. Unfortunately, his home life was difficult: his family had no water or electricity, and sometimes his family would lack food. Due to their financial circumstances, Mr. Martinez Cruz dropped out of school when he was approximately 11 years old and started to work. He has a sixth-grade education. Mr. Martinez Cruz described to the Probation Office his difficult trip to the United States when he was only 17: "He endured walking for days, traveling on top of a train, and witnessing people die. Mr. Martinez Cruz alluded that during his travels, he was held at knifepoint and robbed of his possessions." PSR Sentencing Recommendation at 2. According to what he told the Probation Office, Mr. Martinez-Cruz did some construction and other lawful work while in the United Staes, but the unfortunate truth is that he made his money selling fentanyl and methamphetamine – in this case large quantities of both.

Mr. Martinez-Cruz is someone who was persistent and committed to continuing to sell controlled substances notwithstanding his arrests or his deportation. Neither his arrest and conviction after he turned 18, just after arriving here, nor his deportation on January 1, 2022, or his frequent arrests both before and after, did anything to deter him from returning to selling fentanyl and methamphetamine. Nor did the fact that he and his girlfriend have a 3-year-old daughter and how dangerous all of the drugs he sells could be around her.

In this case, given the amount of drugs, the repeated misconduct, the average and mean sentences actually imposed in these kinds of cases by other courts, and the fact that Mr. Martinez-Cruz was never willing to stop selling drugs even after having a young daughter, the government urges the Court to impose a 46-month sentence. Such a sentence would be sufficient but not greater that necessary to achieve all of the sentencing factors under 3553(a).

**III.    The necessity of the proposed supervised release special conditions**

A term of supervised release is required by statute for the drug-trafficking offenses to which Mr. Martinez-Cruz has pleaded guilty, and it is essential to this disposition if for any reason he is not

deported and/or he decides to return to the United States without permission.

In particular, the special stay-away condition of supervised release allows the government to accomplish one of its primary goals related to protection of the public: to separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to affect a strict stay-away from the Tenderloin for up to four years. Under the terms of supervised release as contemplated, not only will Mr. Martinez-Cruz be prohibited from engaging in any further unlawful conduct, but he will also be prohibited from entering the Tenderloin:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicion-less search condition, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.

The stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking, where courts in this District have encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g., United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002 CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553 CRB.

## CONCLUSION

For the reasons set forth herein and in the PSR, the government respectfully recommends the Court impose a 46-month sentence and four years of supervised release with the terms set forth in the Plea Agreement and as recommended by the Probation Office.

DATED: July 30, 2025

Respectfully Submitted,

CRAIG H. MISSAKIAN
Acting United States Attorney

_/s/_
JEFFREY BORNSTEIN
Assistant United States Attorney